# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01029-COA

JACOB B. SCOTT AND MELODY L. SCOTT                    APPELLANTS

v.

JAMIE SCOTT ROUSE                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2021 |
| TRIAL JUDGE: | HON. MARK ANTHONY MAPLES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JACOB M. SCOTT (PRO SE) |
| | MELODY L. SCOTT (PRO SE) |
| ATTORNEY FOR APPELLEE: | JAMIE SCOTT ROUSE (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 09/27/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Jamie Scott Rouse was granted a divorce from her ex-husband, Jacob Scott, after the chancellor found that Jacob had repeatedly raped Jamie's then-fourteen-year-old daughter (Jacob's stepdaughter). After the chancellor entered a final judgment, Jacob faked his own death and fled the State in an effort to avoid prosecution, but he was later apprehended in Oklahoma. The present appeal, filed by Jacob and his mother (Melody Scott), involves rulings by the chancellor following Jacob's apprehension. Those rulings relate to Jamie's efforts to enforce financial aspects of the final judgment and Jacob and Melody's claims that Jamie wrongfully retained property that belongs to them. For the reasons explained below, all the issues that Jacob and Melody raise on appeal are procedurally barred, either because

they were decided by a previous final judgment that Jacob and Melody failed to appeal from or because Jacob and Melody failed to designate an adequate appellate record. Accordingly, we affirm the chancery court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. In March 2017, Jamie filed a complaint for divorce against Jacob in the Jackson County Chancery Court. In September 2017, a Jackson County grand jury indicted Jacob for nine counts of sexual battery and other crimes against Jamie's then-fourteen-year-old daughter (Jacob's stepdaughter). In January 2018, the chancellor granted Jamie a divorce on the ground of adultery after finding that Jacob repeatedly raped Jamie's daughter, resulting in her pregnancy. The chancellor awarded Jamie periodic alimony of $1,500 per month, $10,280.44 because Jacob had failed to comply with prior orders to pay the mortgage on the marital home and car notes, and $21,471.07 for attorney's fees. Jacob filed a motion for reconsideration or a new trial, which was denied. Neither party appealed.

¶3. In May 2018, Jamie filed a petition for contempt because Jacob had failed to pay the amounts ordered in the divorce decree. Jacob failed to appear for a hearing on the petition, and the chancellor issued a warrant for his arrest. Jacob subsequently withdrew $45,000 from his retirement account, faked his own death, and fled the State.

¶4. In January 2020, Jacob was apprehended in Oklahoma, where he was living under an alias. In February 2020, Jamie filed an ex parte complaint for emergency support and other relief in the chancery court, and the chancellor entered an emergency order granting Jamie

"temporary ownership of all assets belonging to Jacob." The chancellor also entered an income-withholding order directing the Social Security Administration to withhold and pay Jamie alimony from Jacob's Social Security disability benefits and to withhold and pay Jamie a lump sum of $10,280.44 from Jacob's "accumulated back pay."

¶5. In April 2020, Jacob filed a motion to dissolve the emergency order. He also filed a motion to set aside the withholding order, arguing that a withholding order could not be entered in the absence of a prior order to pay child support. In August 2020, the chancellor set aside the withholding order, agreeing that it was not proper because there was no order to pay child support. In addition, the chancellor noted that Jamie had remarried, which terminated Jacob's obligation to pay alimony.

¶6. In September 2020, Jacob filed a "Motion to compel Disclosure of and Return of Asset." He alleged that as a result of the improperly entered withholding order, more than $20,000 of his Social Security disability benefits had been disbursed to Jamie's attorney. He argued that the chancellor should order Jamie to account for and return the funds.

¶7. On December 9, 2020, the chancellor entered a "Final Judgment." The chancellor stated that on November 10, 2020, Jacob and Jamie both appeared in court with counsel, Melody appeared pro se,[1] and all parties presented testimony and other evidence. The

_____

[1] Melody filed multiple motions to intervene in this action, apparently based on allegations that Jamie was in possession of property that belonged to her. The chancellor denied at least one such motion, but Melody filed additional motions and continued to attempt to participate in the case. The record on appeal is not sufficient for this Court to determine whether Melody was ever granted permission to intervene in the chancery court.

3

chancellor found that as a result of the prior withholding order, the Social Security Administration had paid $22,308 to Jamie, which her attorney deposited in his trust account. Jamie requested that she be allowed to retain those funds, while Jacob sought their return. Jacob also sought the return of personal property allegedly in Jamie's possession. The chancellor noted that the original divorce decree granted Jamie a total judgment of $31,751.51 plus interest and that Jacob had defrauded Jamie and the court in an effort to avoid paying that judgment. Under the circumstances, the chancellor found that Jamie should be allowed to retain the funds in her attorney's trust account. The chancellor then stated that Jacob should "have exclusive use, possession and ownership of any and all items of his personal property." Apparently, Jacob's motorcycle was in the possession of Jamie's attorney, and the chancellor ordered him to deliver it to Jacob's attorney.

¶8.   On January 6, 2021, Jacob and Melody filed a pro se "Motion to Appeal Final Judgment."[2] Their twelve-page motion consisted of thirteen wide-ranging legal arguments styled as "affirmative defenses" and a "prayer for relief" that sought damages and the return of personal property allegedly in Jamie's possession. The clerk's docket entry for the motion includes the following notation: "not an appeal to the Supreme Court[;] I specifically asked Melody Scott when she was at the counter."[3] Neither Jacob nor Melody attempted to set this

_____

[2] Jacob's attorney filed a motion to withdraw two days later.

[3] We also note that the motion cannot be treated as a timely motion for a new trial or to alter or amend the judgment because it was filed twenty-eight days after entry of the final judgment. *See* M.R.C.P. 59(b) & (e).

motion for a hearing.

¶9.     In May 2021, Jacob filed a pro se "Motion for Replevin and Motion of Contempt of Court." He alleged that Jamie had not returned his personal property, and he asked the chancellor to award him damages and fine and incarcerate Jamie. The chancellor held a hearing on Jacob's motion on June 21, 2021; however, Jacob and Melody did not designate the transcript as part of the record on appeal.

¶10.    On June 21, 2021, following the hearing, Melody filed a motion requesting that the chancellor recuse himself. Melody alleged, among other things, that the chancellor had "manipulated" Jacob's and Melody's properties, sanctioned "blatant" "theft and disregard of justice," and refused to allow her to present evidence. The docket indicates that the chancellor held a hearing on Melody's recusal motion on July 23, 2021; however, Jacob and Melody did not designate the transcript as part of the record on appeal.

¶11.    On August 5, 2021, the chancellor entered a "Final Judgment and Dismissal with Prejudice." The chancellor noted that during the hearing on June 21, 2021, Jacob claimed that Jamie was still in possession of certain items of Jacob's personal property. However, Jamie testified that she did not have any of Jacob's property. The chancellor found that Jacob failed to present any "credible evidence" to support his allegations and therefore denied his motions for replevin and contempt. The chancellor also denied Melody's recusal motion, finding that she had advanced "[n]o legitimate ground for recusal" and was simply dissatisfied with the court's rulings.

¶12. Jacob and Melody filed a notice of appeal. They subsequently designated only twelve specific documents as the record on appeal. They did not designate any hearing transcripts or exhibits entered into evidence. Although it has no effect on this appeal, we note that Jacob's criminal case proceeded to trial in June 2022. Following a jury trial, Jacob was convicted on all fourteen counts of his indictment, and the circuit court sentenced him to a total of eighty-five years in prison to be served day for day without eligibility for parole.

**ANALYSIS**

¶13. On appeal, Jacob and Melody filed a pro se brief that identifies twelve issues. The first eleven issues all relate to the December 9, 2020 final judgment. However, Jacob and Melody failed to appeal from that final judgment. In this appeal from the August 5, 2021 final judgment, they cannot resurrect issues that were finally adjudicated in the December 9, 2020 final judgment. Therefore, Jacob and Melody's challenges to the December 9, 2020 final judgment are all waived. *Abercrombie v. Abercrombie*, 282 So. 3d 763, 772-73 (¶33) (Miss. Ct. App. 2019); *Burgess v. Williamson*, 270 So. 3d 1031, 1036-37 (¶¶20-21) (Miss. Ct. App. 2018); *Chasez v. Chasez*, 957 So. 2d 1031, 1037 (¶14) (Miss. Ct. App. 2007).

¶14. Jacob and Melody's twelfth issue challenges the chancellor's denial of Melody's motion to recuse. However, appellate review of that ruling is barred because Jacob and Melody failed to designate an adequate record. Melody's recusal motion was based in large part on her claim that the chancellor was unfair and refused to allow her to present evidence during a hearing on June 21, 2021, and during prior hearings. However, Melody failed to

6

designate any of the relevant hearing transcripts as part of the record on appeal. In addition, the chancellor held a hearing on Melody's recusal motion on July 23, 2021; however, Melody also failed to designate that hearing transcript. "It is the appellant's duty to see that all matters necessary to his appeal, such as exhibits, witnesses' testimony, and so forth, are included in the record, and he may not complain of his own failure in that regard." *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977). Melody waived any challenge to the chancellor's denial of her recusal motion because she failed to designate an adequate record for this Court to review. *Id.*

¶15. Finally, any challenge to the chancellor's denial of Jacob's motions for replevin and contempt is also procedurally barred. The chancellor denied Jacob's motions because he found that Jamie was a more credible witness than Jacob, who previously had faked his own death in an effort to defraud the court and avoid prosecution. Jacob and Melody waived any challenge to the chancellor's ruling because they failed to designate transcripts of the hearing and testimony on which the ruling was based. *See* M.R.A.P. 10(b)(2) ("[I]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.").

¶16. In summary, the issues that Jacob and Melody raise on appeal are all procedurally barred, either because they were the subject of a prior final judgment that Jacob and Melody failed to appeal from or because Jacob and Melody failed to designate an adequate record for

their appeal. Therefore, the judgment of the chancery court is **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**